# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAWN L. PERRY, :
:
        Plaintiff, :
:
v. : 3:17-CV-1082
: (JUDGE MARIANI)
UNITED STATES OF AMERICA and :
RAFAEL LOPEZ-MONEGRO, :
:
        Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

This case arises out of a claim that in November of 2015, Dr. Hoon Yoo, an employee of the United States of America, and Dr. Rafael Lopez-Monegro, with whom Dr. Yoo consulted, were negligent, breached the standard of care, and caused Dawn Perry to sustain injury to her left ureter and eventual loss of her left kidney. (See Am. Compl., Doc. 15).

On June 20, 2017, the United States removed the above-captioned "medical professional liability" action from the Court of Common Pleas for Wayne County, on the basis that Defendant Dr. Hoon Yoo was eligible for Federal Tort Claims Act coverage pursuant to the Federally Supported Health Centers Assistance Act. The United States soon thereafter filed an "Unopposed Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction" (Doc. 5) due to Plaintiff's failure to exhaust her administrative remedies. Following a conference call with the parties on August 11, 2017, the Court issued an order

(Doc. 9) granting the United States' motion, staying proceedings in this case pending resolution of Plaintiff's administrative claim by the United States Department of Health and Human Services, and retaining supplemental jurisdiction over the state law claim against non-government Defendant Rafael Lopez-Monegro. The Court further ordered Plaintiff's counsel to notify the Court within seven days "of its receipt of notice from the Department of Health and Human Services of the disposition of Plaintiff's administrative claim and [to] timely take such actions as are necessary to place this matter before the Court should her administrative claim be denied." (*Id*. at ¶ 6). In May, 2020, no documents having been filed of record by any party, the Court ordered Plaintiff to file a letter setting forth the status of this action. (Doc. 10). In response, Plaintiff submitted a letter stating that "[t]he matter has not been resolved administratively and, therefore, the case may be reopened and moved to the Court's active docket." (Doc. 11). Plaintiff's counsel thereafter took no action to pursue the case, resulting in the Court issuing another Order on September 29, 2020, lifting the stay in this case and ordering Plaintiff's counsel to file a letter "informing the Court whether he intends to proceed with this action, and if so, the manner in which [he] intends to do so, including whether an Amended Complaint will be filed in this matter." (Doc. 13).

On October 27, 2020, Plaintiff filed an Amended Complaint alleging medical malpractice against the United States (Count I) and Dr. Lopez-Monegro (Count II) due to their negligence. (Doc. 15). The United States thereafter filed a Motion for Summary Judgment (Doc. 22) asserting that the claim against it is time-barred. Plaintiff and Defendant Lopez-

Monegro each filed a brief in opposition to the United States' Motion (Docs. 27, 33), to which

the United States filed a consolidated reply brief (Doc. 37).

The United States' Motion for Summary Judgment is now ripe for decision. For the

reasons set forth below, the Court will grant the motion.

## II. STATEMENT OF UNDISPUTED FACTS

The United States has submitted a "Statement of Undisputed Material Facts" (Doc.

26) as to which it submits there is no genuine issue or dispute, and Plaintiff and Defendant

Lopez-Monegro have each submitted a Response to the United States' Statement of

Undisputed Material Facts (Docs. 28, 34), with the result being that the following facts have

been admitted except as specifically noted.[1]

On or about July 12, 2017, Edward McDaid, counsel for Perry, sent Plaintiff's

administrative claim, on the federal form SF-95 (Claim for Damage, Injury, or Death), to the

Office of General Counsel for the Department of Health and Human Services ("HHS").

Plaintiff's counsel listed his address on the SF-95 as 255 South 17th Street, Suite 1400,

---

[1] In reciting the material facts, the Court cites to only the moving party's statement of fact when that fact is undisputed.

In addition, with the exception of one statement of material fact by the United States, Defendant Lopez-Monegro's response to each statement of material fact states that the fact is "[d]isputed on the ground that this statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted." (Doc. 34, at ¶¶ 1, 2, 3, 5). Lopez-Monegro's stated "dispute[s]" do not constitute proper denials of the United States' statement of material facts. Defendant's "dispute[s]" further ignore the fact that the statements of fact, to the extent one or more may constitute hearsay, "can be considered on a motion for summary judgment if they are capable of admission at trial", *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). Lopez-Monegro fails to set forth any basis for a finding by the Court, at this time, that the evidence underlying one or more of the stated facts would be inadmissible at trial. Thus, where relevant and undisputed by Plaintiff, the Court has included these facts in the Court's statement of undisputed facts.

3

Philadelphia, Pennsylvania, 19103 ("the 17th Street address"). (Doc. 26, at ¶ 1; *see also*, Decl. of Scott Driggs, Doc. 26-1, Ex. 1, ¶ 3). HHS and Plaintiff's counsel thereafter corresponded on two occasions, using the 17th Street address. (Doc. 26, at ¶ 2).

On or about January 30, 2019, Attorney McDaid and Scott Driggs, an HHS attorney, discussed settling Plaintiff's administrative claim. (Doc. 26, at ¶ 3; Doc. 28, at ¶ 3). Plaintiff further "admit[s]" that Driggs extended an offer to settle, which was declined by Plaintiff. (Doc. 28, at ¶ 3). During the conversation discussing settlement, Plaintiff's counsel never indicated that he had changed his address or that a denial letter should be sent to a different address than the 17th Street Address. (Doc. 26, at ¶ 3; *see also*, Decl. of Scott Driggs, Doc. 26-1, Ex. 1, ¶ 6).[2]

In his Declaration, Driggs states the following:

> On February 1, 2019, OGC [Office of General Counsel] mailed Plaintiff's denial letter to [the] address set forth in paragraph 3 [17th Street Address]. OGC sent the denial letter certified mail (No. 70161370000136744864) through the United States Postal Service, pursuant to its normal business practice for sending FTCA denial letters.

(Decl. of Scott Driggs, Doc. 26-1, Ex. 1, ¶ 7). The letter from William Biglow, Deputy Associate General Counsel at HHS, stamped February 1, 2019 and addressed to Plaintiff's counsel at the 17th Street Address, provided a "notice of final determination on [Perry's

---

[2] Plaintiff neither admits nor denies Defendant's statement that counsel never informed Driggs that he had changed his address or that a denial letter should be sent to a different address. (*See* Doc. 28, at ¶ 3). The Court thus deems this fact to be admitted.

FTCA] claim, as required by 28 U.S.C. § 2401(b)", and stated that Perry's claim "is denied."
(Denial Letter, Doc. 26-1, Ex. 2).

Although Plaintiff admits that the USPS tracking information for the denial letter indicates that the letter was delivered on February 27, 2019, Plaintiff denies that the letter was actually delivered. (Doc. 26, at ¶ 5; Doc. 28, at ¶ 5). The United States has filed of record the Certified Mail Receipt referenced in Driggs' Declaration (Doc. 26-1, Ex. 1, Attachment A), but no signed Domestic Return Receipt is of record.

### III. STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific

5

facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255.

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

Count I of the Amended Complaint alleges that Dr. Yoo, an employee of the United States, was negligent and careless when performing a surgical procedure on Perry and in her post-operative care of Perry.[3]

The United States claims that it is entitled to summary judgment because the action, arising under the Federal Tort Claims Act ("FTCA") is time-barred. (Doc. 25, at 2). The United States argues that the FTCA requires an action in federal court to be commenced "within six months of the date the notice of final denial of an administrative tort claim is mailed by the appropriate agency", and thus Plaintiff must have filed her Amended Complaint on or before August 1, 2019. (*Id.*).

In turn, Plaintiff claims that her counsel never received the denial letter from HHS and that her action against the United States is not time-barred for two reasons. First,

_____

[3] The Government has acknowledged that Dr. Yoo, a doctor employed by Wayne Memorial Community Health Center, is an employee of the United States for purposes of the FTCA. (*See* Doc. 1, at ¶ 2). Thus, Count I is properly brought against the United States.

Plaintiff asserts that "mere mailing" of the denial letter is insufficient, and instead, without citing any supporting law, that "logically, mailing, certified mail and receipt, provable by a 'green card', are necessary prerequisites to the onset of the running of the limitation period." (Doc. 27, at 2-3). Second, Plaintiff asserts, without minimal explanation, that equitable tolling "would preclude the dismissal of the action." (*Id.* at 3). Similarly, Defendant Lopez-Monegro argues that equitable tolling applies in the present action and further states that both Plaintiff and Lopez-Monegro "would be irreparably prejudiced by the dismissal of Plaintiff's claims against the surgeon who allegedly caused the injuries complained of in the Amended Complaint." (Doc. 33, at 4-5).

Pursuant to 28 U.S.C. § 2401(b),

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). Under the FTCA, a "claimant must file both a claim with the federal agency within two years of the tort *and* a suit within six months of the agency's denial. . . ." *Sconiers v. United States*, 896 F.3d 595, 598-599 (3d Cir. 2018).

The FTCA operates as a limited waiver of the United States's sovereign immunity. *See Roma v. United States,* 344 F.3d 352, 362 (3d Cir. 2003). "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *Livera v. First Nat'l State Bank of N.J.,* 879 F.2d 1186, 1194 (3d Cir. 1989). "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended. " *United States v. Kubrick,* 444 U.S. 111, 117-18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

*White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).

The United States' position that Perry must have filed her FTCA action on or before August 1, 2019 necessarily rests upon the plain language of § 2401(b) and the repeated admonition by courts that the FTCA's procedures must be "strictly construed". The Third Circuit has not specifically addressed the interpretation and application of § 2401(b), and specifically whether the language of § 2401(b) providing that a "tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented" mandates that a court calculate the six-month statutory period as of the date of the mailing, regardless of whether the claimant actually receives the notice. However, a number of other Circuit Courts, including the Fifth, Sixth, Seventh, and Ninth, have long held in precedential opinions that the statutory limitation period begins to run either on the day, or on the day after, the final notice is mailed. *See e.g., Carr v. Veterans Admin.*, 522 F.2d 1355, 1357 (5th Cir. 1975) (Fifth Circuit rejecting Plaintiff's argument that the statute of limitations under § 2401(b) did not commence running until she received the notice of denial and explaining that "[w]hile it might be more equitable if the short period of limitations provided by 28 U.S.C. § 2401(b) commenced with receipt by the claimant of notice of the administrative agency's denial of the claim, the plain words of the statute

9

defeat" this argument.)[4]; *Jackson v. United States*, 751 F.3d 712, 717 (6th Cir. 2014) (Sixth

Circuit rejecting "Jackson['s argument] that an 'undelivered notice of denial' does not trigger

the six-month limitation window outlined in the FTCA" and explaining that "[t]he FTCA

unambiguously states that the six-month limitation window runs 'from the date of mailing.'

28 U.S.C. § 2401(b).  As our sister circuits have noted, the FTCA does not require that the

claimant receive the denial letter in order to commence the six-month limitation period.")[5];

*Tribue v. United States*, 826 F.2d 633, 635 (7th Cir. 1987) (Seventh Circuit finding that six-

month limitation period set forth in § 2401(b) begins to run the day after the agency mails its

final denial of claim letter); *Berti v. V.A. Hosp.*, 860 F.2d 338, 340 (9th Cir. 1988) (Ninth

Circuit holding that "the date of the initial mailing of a properly certified or registered letter

begins the six-month statutory period.").  The Second and Fourth Circuit Courts have, in

non-precedential opinions, reached similar conclusions.  *See Davis v. Goldstein*, 563

F.App'x 800, 802 (2d Cir. 2014) (Second Circuit explaining that under the FTCA, "a plaintiff

must file his federal complaint within six months after the date of mailing, by certified or

---

[4] *See also*, *Beemer v. Holder*, 495 F.App'x 396, 400 (5th Cir. 2012) ("Beemer contends that the statute of limitation for bringing his FTCA claims did not expire before he filed this lawsuit because he never received the government's notice denying his claim. Beemer focuses on the government's inability to produce a return receipt.  The statute of limitations for Beemer's FTCA claims expired before Beemer filed this lawsuit because whether Beemer *received* the notice is immaterial for the purpose of the FTCA.  The plain language of 28 U.S.C. § 2401(b) requires that the statute of limitations start to run the moment the government *mails* notice of an FTCA claim denial." (citing *Carr*, 522 F.2d at 1357) (emphasis in original).

[5] The Sixth Circuit in *Jackson* further explained that "[t]he FTCA requires only that the agency mail the denial by certified mail. . .  An added receipt requirement would constitute a burden on the agency to guarantee delivery, and would in fact be construing the FTCA in favor of plaintiffs suing the United States, when the Supreme Court has instructed courts to do the opposite." *Jackson*, 751 F.3d at 717.

registered mail, of notice of final denial of the claim by the agency to which it was presented. . . . Actual receipt of the notice is not required by the statute.") (internal quotation marks and citations omitted); *Zander v. United States*, 494 F.App'x 386, 388 (4th Cir. 2012) (Fourth Circuit concluding that District Court did not err in "[g]iving effect to the plain language of § 2401(b) understood in accordance with its ordinary meaning," and thus "after applying standard dictionary definitions[,] that the district court correctly determined that the 'date of mailing' of the notice finally denying Zander's administrative claim" was the date the United States first sent a notice of denial to claimant, not the date the United States re-sent the notice to a different address after the first notice was "returned to sender.").

In addition to the Courts of Appeal that have addressed this issue, District Courts within the Third Circuit have repeatedly found that the six-month limitation period set forth in § 2401(b) commences running as of the date of the mailing of the final notice of denial. *See e.g., Youlo v. United States*, 2013 WL 4479199, *4 (E.D. Pa. 2013) ("The FTCA measures the limitations period from the 'date of mailing' of the claim denial, and not from the date the denial is received. . . . Thus, when a plaintiff fails to file a lawsuit within six months after a claim denial is sent by certified or registered mail, courts hold that jurisdiction is lacking and that the suit must be dismissed, even if the attorney or the claimant alleges issues related to receiving the denial notice.") (collecting cases); *Forman v. United States*, 1999 WL 793429, *6 (E.D. Pa. 1999) ("the terms of the statute [§ 2401(b)] make mailing, not receipt, the relevant act."). *See also, Kielbasinski v. Veterans Admin.*, 2016 WL 3676816, *5 (W.D. Pa.

11

2016) (because six month period began to run upon the date of the mailing of the denial letter, Plaintiff's argument that he did not receive the final denial letter was "unavailing"); *Abdullah v. Miller*, 2016 WL 4521692, *6 n.4 (M.D. Pa. 2016) (six-month period to file FTCA claim began on date final denial was mailed).[6]

The case law cited herein makes clear that Plaintiff's claim that, in addition to mailing, "receipt, provable by a 'green card'" is also a "necessary prerequisite[] to the onset of the running of the limitation period" (Doc. 27, at 3)(emphasis added) is without legal support.

In support of its motion for summary judgment, the United States has provided unrebutted evidence that the final denial letter was properly sent, by certified mail, to the address of record for Plaintiff's counsel. The United States submitted documentary evidence that the final denial letter was sent by certified mail to Plaintiff's counsel's 17th

---

[6] This Court notes the Third Circuit's recent opinion in *Sconiers v. United States*, 896 F.3d 595 (3d Cir. 2018). In *Sconiers*, the question of when the six-month statute of limitations period began to run was not at issue. As the Court explained:

> At issue in this case is whether the FTCA requires – as the Government argues – that a claimant file *both* a claim with the federal agency within two years of the tort *and* a suit within six months of the agency's denial, or – as Sconiers contends based on the provision's use of the word "or" – that a plaintiff satisfies the limitations period by meeting just one of the two conditions.

*Id.* at 598. The Third Circuit "agree[d] with the Government and [held] that both conditions must be satisfied in order for a plaintiff to properly bring a claim under the FTCA." *Id.* In the final paragraph of the opinion, the Court stated that "Sconiers does not dispute that she filed her complaint before the District Court eight months after USPS *delivered* her notice of denial to her counsel's office" and noted that "on appeal, she does not argue that the statute of limitations should be tolled. . . ." *Id.* at 599 (emphasis added). The word "delivered" therein was only used to state the undisputed untimely nature of Plaintiff's filing of her Complaint. Neither the Third Circuit, nor any other court in this Circuit (or elsewhere), has used this word to suggest that the six-month statutory period begins to run at a time other than when the notice of denial is mailed.

Street Address on February 1, 2019. (Doc. 26-1, Ex. 1, Decl. of Scott Driggs, ¶ 7; *id.* at Attachment A, Certified Mail Receipt). Plaintiff has not come forward with any evidence for this Court to find that a genuine dispute of fact exists as to whether the denial letter was sent on February 1, 2019, or whether the letter was sent in accordance with § 2401(b) on this day, thus starting the commencement of the six-month statutory period. The United States has also shown that there is no genuine material dispute that the letter was delivered to the 17th Street Address. The United States submitted of record a USPS tracking number for the denial letter, as well as the USPS tracking information. (Doc. 26-1, Ex. 1, Attachment A, Certified Mail Receipt & Tracking Information). Plaintiff admits that the USPS tracking information for the denial letter indicates that the denial letter was delivered on February 27, 2019. (Doc. 26, at ¶ 5; Doc. 28, at ¶ 5). Plaintiff nonetheless denies that the letter was delivered. (Doc. 28, at ¶ 5). Plaintiff's assertion that, despite the uncontested tracking information, the letter was not delivered is akin to an averment that the letter was not received. However, Plaintiff has come forward with no evidence, including, for example, a sworn affidavit from Plaintiff's counsel stating that he did not receive the letter or setting forth a basis for any belief that the letter was not, or could not have been, delivered, to dispute the Government's record evidence or to create a genuine dispute as to whether the letter was delivered to the 17th Street Address.

In sum, neither Plaintiff nor Lopez-Monegro present any case law to support a claim that the date of mailing of a final denial of a claim by certified or registered mail, is not, in

itself, sufficient to commence the six-month statutory period set forth in § 2401(b). In contrast, as set forth herein, courts addressing this issue have consistently found that the six-month period is triggered by the mailing of the final notice of denial, regardless of when, or if, it was received. The courts' holdings are supported by the plain language of § 2401(b) requiring an FTCA tort claim to be brought "within six months after *the date of mailing*, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented" (emphasis added). The holdings are also consistent with the Third Circuit's direction that the FTCA must be strictly construed. Drawing all inferences in the light most favorable to Plaintiff and Lopez-Monegro, as explained, *supra*, they have presented no evidence to rebut the United States' documentary evidence and to create a genuine dispute as to the date upon which the United States sent the final denial letter by certified mail. In addition, Plaintiff's statement in his Response to the United States' Statement of Material Facts admits that the USPS tracking information indicates that the letter was delivered, but denies the letter was delivered and "specifically aver[s] that the letter was not delivered" (Doc. 28, at ¶ 5). This denial and "averment", alone, are insufficient to create a genuine factual dispute where Plaintiff has not offered any evidence to support that denial. *See In re Ikon Office Sol.*, 277 F.3d 658, 666 (3d Cir. 2002) ("a party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for

trial."). Plaintiff's self-serving statements in his opposition brief that the letter was not received (Doc. 27, at 2, 3), unsupported by any record evidence, are also of no value. Thus, Plaintiff has also not presented any evidence "supporting the claimed factual dispute", *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968), *i.e.* evidence to rebut the United States' evidence that the letter was delivered on February 27, 2019.

Here, it is undisputed that Plaintiff filed her administrative claim in mid-July 2017 (Doc. 26, at ¶ 1) and that the United States was dismissed from this action on August 11, 2017 (Doc. 9). It is also uncontroverted that the final denial letter dated February 1, 2019 was sent by certified mail that same day (*see* Doc. 26-1, Ex. 1, Attachment A). The record reflects that Plaintiff filed her Amended Complaint against the United States and Lopez-Monegro on October 27, 2020 (Doc. 15), over 20 months after the certified mailing of the final denial letter. Because the plain language of § 2401(b) mandates that the FTCA action must commence within six months after the date of certified or registered mailing of the notice of the final denial of the claim by the agency to which it was presented, Plaintiff must have filed her Amended Complaint bringing an FTCA claim against the United States on or before August 1, 2019. Plaintiff's FTCA claim comes almost 15 months too late and is thus time-barred.

For the afore-stated reasons, Plaintiff's action against the United States is not timely and, in the absence of equitable relief, the United States' motion for summary judgment must be granted.

The Court thus turns to Perry and Lopez-Monegro's assertion that the doctrine of equitable tolling operates to save Plaintiff's FTCA claim.[7]

As the Third Circuit recently explained:

> It is well established that a court may "rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff [shows she] has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" [*Santos ex. rel. Beato v. United States,* 559 F.3d 189, 197 (3d Cir. 2009)] (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). Tolling "is [an] extraordinary" remedy, *id.*, and "is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair," *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (alterations in original) (quoting *Shendock v. Dir., Office of Workers' Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990) (en banc)).

*D.J.S.-W. v. United States*, 962 F.3d 745, 749-750 (3d Cir. 2020). Thus, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 755 (2016) (quoting *Holland v. Florida*,

---

[7] "Because the doctrine [of equitable tolling] effectively extends an otherwise discrete limitations period set by Congress, whether equitable tolling is available is fundamentally a question of statutory intent." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Here, this Court need not examine the statutory intent of the FTCA, and specifically 28 U.S.C. § 2401, to determine whether equitable tolling is available where the Supreme Court has expressly held that the FTCA's time bars are non-jurisdictional and courts may equitably toll the FTCA's limitations periods. *See United States v. Kwai Fun Wong*, 575 U.S. 402, 405, 412, 420 (2015).

560 U.S. 631, 649 (2010)). A Court should treat these requirements as distinct elements and need not address both where a Court has already found that the litigant failed to satisfy one of the elements. *Id.* The diligence prong covers "those affairs within the litigant's control" whereas the extraordinary-circumstances prong covers "matters outside" the litigant's control. *Id.* at 756.

Although Perry asserts that she is entitled to equitable tolling in this action, she fails to address either the diligence or extraordinary circumstance prongs. Instead, Plaintiff merely states that she is entitled to equitable tolling because she "promptly filed an administrative claim, and an amended complaint though she had never received [a] denial letter." (Doc. 27, at 3, 4).

Plaintiff's conclusory statement provides no support for this Court to find that she diligently pursued her FTCA claim against the United States. While "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence,'" *Holland*, 560 U.S. at 653 (internal citations and quotation marks omitted), the undisputed evidence of record and the docket sheet in this action reflect that Plaintiff did not exercise any diligence in pursuing her FTCA claim in court, let alone "reasonable diligence".

It is undisputed that Plaintiff's counsel filed the administrative claim in July of 2017, that in January, 2019, Plaintiff's counsel and counsel for HHS discussed settling Plaintiff's administrative claim, and that the offer to settle was declined by Plaintiff at that time. (Doc. 26, at ¶¶ 1, 3; Doc. 28, ¶¶ 1, 3). Even assuming that Plaintiff did not receive the final denial

letter mailed on February 1, 2019, there is no evidence that Plaintiff thereafter took any action to determine the status of the administrative claim. Rather, it was only when this Court issued an Order on May 7, 2020, (Doc. 10) directing Plaintiff to file a status update that Plaintiff acknowledged that the "matter has not been resolved administratively" (Doc. 11). Nonetheless, despite this letter from Plaintiff, filed May 13, 2020, Plaintiff still took no further measures to pursue her FTCA claim until this Court issued a second Order on September 29, 2020 (Doc. 13) directing Plaintiff to inform the Court whether she intended to proceed with this action, which finally prompted Plaintiff to file an Amended Complaint on October 15, 2020 (Doc. 16). Thus, were it not for this Court *twice* inquiring into the status of Plaintiff's administrative claim against the United States, and whether Plaintiff intended to pursue her action pending in federal court against Lopez-Monegro and/or file an Amended Complaint, there is no indication Plaintiff would have taken any action to pursue her FTCA claim.

Furthermore, Plaintiff cannot escape her lack of diligence by merely claiming that she never received the February 1, 2019 denial letter. Plaintiff admits that on or about January 30, 2019, her counsel spoke with counsel for the HHS and declined the offer to settle. Plaintiff does not assert that she ever contacted HHS or inquired into the status of her administrative claim during the 16-month period of time from her decision not to settle the administrative claim until the Court's May, 2020, Order. Nor does Plaintiff claim that counsel was in any way misled by HHS, informed that another settlement offer would be

forthcoming, or told that a denial letter would not be, or had not been, mailed. One phone call or letter to HHS in the six months after Plaintiff's decision to decline HHS' settlement offer would have placed Plaintiff on notice that her claim had been denied and she needed to file her court action against the United States.[8]

As a result, the record is clear that Plaintiff completely neglected to exercise diligence to preserve her legal rights and to pursue her FTCA action in court.

Although the Court need not address the extraordinary circumstance prong of the equitable tolling analysis where Plaintiff has failed to satisfy the diligence prong, *Menominee Indian Tribe of Wis.*, 136 S.Ct. at 755, the Court will nonetheless briefly do so. To meet the second prong of the equitable tolling test, a litigant must show that the circumstances which caused that litigant's delay "are both extraordinary *and* beyond its control." *Menominee Indian Tribe*, 136 S.Ct. at 756 (emphasis in original). "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

---

[8] The Court's determination that Plaintiff failed to diligently pursue her legal rights and her FTCA claim is further bolstered by her decision not to file the FTCA claim prior to October, 2020, despite her ability to do so and alleged belief that her claim still remained pending after more than three years. *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").

19

Preliminarily, for the reasons set forth in analyzing the diligence prong, it is evident that the circumstances which caused Plaintiff's delay were not beyond her control.[9] Plaintiff could have easily determined, at any time after February 1, 2019, the status of her administrative claim. Instead, Plaintiff took no action to advance her FTCA claim until this Court inquired into the status of the administrative claim, approximately 16 months after Plaintiff declined the HHS' settlement offer on January 30, 2019.

Nor has Plaintiff advanced any reason why her alleged lack of receipt of the final denial letter constitutes an "extraordinary" circumstance. The failure to receive a final denial letter in an FTCA case does not, alone, constitute an extraordinary circumstance. *See e.g.*, *Kielbasinski*, 2016 WL 3676816, at *6 (where Plaintiff argued that he did not receive Defendant's final denial letter, explaining that "[h]aving considered the circumstances presented, the Court finds that Plaintiff has presented a garden-variety claim of excusable neglect, not an extraordinary circumstance that warrants equitable tolling.") (internal quotation marks omitted); *Forman*, 1999 WL 793429, at *11 (counsel's failure to either be aware of the FTCA requirements or of status of the administrative claim under the FTCA do not constitute extraordinary circumstances). Perry has presented no reason why, even crediting her assertion that she did not receive the final denial notice, this Court should

---

[9] *See D.J.S.-W*, 962 F.3d at 751 (recognizing that "diligence" and "extraordinary circumstances" are distinct elements but explaining that "prior [Third Circuit] case law [which] may appear to have blended the two components, . . . is merely a reflection of the fact that, in practice, the two elements often go hand in hand.").

consider this lack of receipt, alone, to constitute an "extraordinary" circumstance and apply the extraordinary remedy of equitable tolling.

As Plaintiff has not established that she diligently pursued her rights and that some extraordinary circumstance stood in her way and prevented timely filing, Plaintiff's FTCA claim is not entitled to equitable tolling and must be dismissed.

## V. CONCLUSION

For the foregoing reasons, this Court will grant the United States' Motion for Summary Judgment (Doc. 22). A separate Order follows.

Robert D. Mariani
United States District Judge